In the Matter of the Application of FRANK C. MOORE, Petitioner, for an Order Pursuant to Article 14 of the Election Law Requiring MICHAEL F. WALSH, as Secretary of State of the State of New York, Respondent, to Accept and File a Certain Independent Nominating Petition Naming Such Petitioner as a Candidate of the City Fusion Party for the Office of Comptroller of the State of New York and to Certify and Transmit a Statement Thereof to the Proper Boards of Elections.*

Supreme Court, Special Term, Albany County, October 25, 1941.

* Affd., 262 App. Div. 1060; 286 N. Y. 552.

*Herbert Brownell, Jr.* [*Kenneth S. MacAffer* and *Borden H. Mills* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor General,* of counsel], for the respondent.

BERGAN, J. The Election Law of 1909 (Laws of 1909, chap. 22) described the instruments by which independent nominations for public office were to be made as "independent certificates of nominations." (§ 123.) In the general revision of the law in 1922 (Laws of 1922, chap. 588) the instruments to be filed for independent nominations were no longer described as "certificates." Independent nominations for public office were thereafter to be made "by a petition" (§ 137), described in section 140 and elsewhere as "a petition for an independent nomination." The term "certificate" was used in a more limited sense to refer to party nominations, declinations of both party and independent nominations, and as a means of filling vacancies in nominations. (Laws of 1922, chap. 588, § 140, subds. 3, 5–7, 9, 10.)

Prior to the revision of 1922, no provision seems to have been made for the contingency of a vacancy in office occurring too late to comply with the time limits prescribed for nominations to be filled at general elections. (See, for instance, Laws of 1909, chap. 22, § 128, as amd. by Laws of 1911, chap. 891, and Laws of 1913, chap. 820.) In 1921, when the Election Law was quite broadly revised (Laws of 1921, chap. 479), there was again no provision for such a contingency in section 128, which provided time limits both for "certificates of party nominations" and "independent certificates of nomination."

The same act of revision which in 1922 initiated the use of the word "petition" to describe the instrument by which independent nominations were to be made, and which continued the term "certificate of nomination" in reference only to party nominations, also for the first time established a provision for nomination in the event of a vacancy in office occurring too late to comply with the usual time limits prescribed for general elections. (§ 140.)

By the last paragraph of that section it was provided that "certificates of nomination" to fill a vacancy occurring (by reference to § 131, subd. 7) after the fifth Tuesday preceding the fall primary shall be filed as soon as practicable.

The crucial question in this case is whether the Legislature in 1922, by using only the term " certificates of nomination " in reference to nominations to fill a vacancy in public office arising after the usual time for nominations had passed, intended to provide exclusively for party nominations or intended also to provide for independent nominations.

The language actually employed, the development of the Election Law prior to the amendments of 1922, the incorporation by reference of part of a section dealing only with party nominations, and the general necessity of requiring a reasonable time for public inspection of independent nominating petitions prior to an election, all seem to point to an intent to exclude independent nominations and to include only party nominations after the usual filing period.

The revision of 1922 indicates careful legislative consideration of the subject and of terms used. New language was employed to describe independent nominations. A " certificate of nomination " became, in more accurate language, limited to party nominations in the act of revision. In the same section (§ 140) which fixed limitation of time and which employed, in respect of those limitations, the new description " petition for an independent nomination," and " certificate of nomination " in a new and delimited sense, machinery was created for the filing of " certificates of nomination " to fill a vacancy in public office.

The term, thus carefully distinguished in the same section, could not have been used loosely in the new provision for filling vacancies in office. I conclude that it means only what it says; that it evinces a purpose of delimitation to those nominations thereafter to be made by certificates, i. e., party nominations, and this, notwithstanding that there still remain in two other remote sections of the Election Law references to the " independent certificate " used prior to the amendments of 1922. (§ 2, subd. 11; § 82.)

It is certainly beyond debate that the Legislature unequivocally intended to abandon the use of the word " certificate " for independent nominations after 1922, and the language of the last paragraph of section 140 of the amendment of that year is so closely integrated with the changes of nomenclature there effected that it cannot be severed.

Moreover, the " vacancy described in subdivision seven of section one hundred and thirty-one," to which the language of section 140 refers in defining the kind of vacancy considered, is found, when that subdivision is examined, to relate to a party nomination to fill a vacancy in public office and the subdivision is part of a section dealing wholly with party nominations.

It is argued that this construction should be avoided because it is unjust and that it must be avoided because the Constitution requires a different result. Yet the actual period in which a vacancy could arise for which independent nominating petitions would be excluded would be about a week, between the fourth Tuesday before election (in 1941, October seventh) and October fifteenth. Under the provisions of the former law, it has been seen that such petitions could not be filed at all after the last day designated for filing in the statute. Moreover, independent nominating petitions are peculiarly susceptible to irregularities in execution, as it has been frequently demonstrated in this State, and it is surely competent for the Legislature to provide that they shall be filed in all instances early enough to admit of scrutiny and judicial inquiry before an election. In the view taken of the language used, I think that is what the Legislature has done and it is neither unreasonable nor in violation of constitutional rights.

Petition dismissed, without costs. Submit order.